

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-4-2002

# Ambrose v. Robinson

Precedential or Non-Precedential: Precedential

Docket No. 01-1871

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Ambrose v. Robinson" (2002). *2002 Decisions.* Paper 551.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/551

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed September 4, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 01-1871 and 01-3229

TERRY L. AMBROSE,

v.

TOWNSHIP OF ROBINSON, PENNSYLVANIA,

Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(D.C. No. 99-cv-01218)
District Judge: The Honorable Donetta W. Ambrose

Argued April 30, 2002

BEFORE: NYGAARD, ROTH, and WEIS, Circuit Judge s.

(Filed: September 4, 2002)

David P. Helwig, Esq. (Argued)
Marks, O'Neill, O'Brien & Courtney
707 Grant Street
3200 Gulf Tower
Pittsburgh, PA 15219
 Counsel for Appellant,
Terry L. Ambrose

Joseph H. Chivers, III, Esq. (Argued)
Suite 600
312 Boulevard of the Allies
Pittsburgh, PA 15222
 Counsel for Appellee,
Township of Robinson

Samuel P. Kamin, Esq.
Goldberg, Kamin & Garvin
437 Grant Street,
 1806 Frick Building
Pittsburgh, PA 15219
 Counsel for Appellant,
Township of Robinson

OPINION OF THE COURT

NYGAARD, Circuit Judge:

The issue on appeal is whether the District Court should

have entered a judgment as a matter of law for Robinson Township in this First Amendment retaliation case involving one of its police officers. We find that there was insufficient evidence that the officer's speech was a motivating factor in his suspension, and that the District Court's "perceived support" theory does not provide a legal basis for liability. We will reverse and remand the cause to the District Court for it to enter judgment in favor of the Township.

I.

Until his recent retirement, Appellee, Terry Ambrose, was a sergeant in Robinson Township's police department. Ambrose was suspended from his position for thirty days in 1999. He then brought this suit alleging that he was suspended in retaliation for his aid and/or support of a fellow officer's lawsuit against the Township.

The fellow officer, James Felt, had sued Robinson Township for a series of "adverse consequences" he allegedly suffered at work. Felt v. Township of Robinson, No.

2

99-330 (W.D. Pa. 1999). These "adverse consequences" included a suspension, frequent criticisms, threats of disciplinary action, the arbitrary changing of his schedule, accusations of unlawful conduct, demands for repayment of amounts paid in a settlement, and precluding him from effectively discharging his duties. Felt alleged that the adverse consequences occurred because he participated in a series of raids on three establishments where police suspected that video poker machines were being used for gambling.

On May 13, 1999, Ambrose executed an affidavit regarding facts known to him relevant to Felt's case. In his affidavit, Ambrose identified facts suggesting that illegal gambling has been and continues to be a problem in Robinson Township. He further asserted that these facts, at the very least, have been ignored by senior managers and officials in the Township. Ambrose's affidavit was received by David Helwig, who was Robinson's lawyer in the Felt lawsuit, on June 17, 1999 as part of a document production. The complete document production, including Ambrose's affidavit, was then forwarded by Helwig to Robinson Township solicitor Sam Kamin. Robinson Township manager Berne Dudash received a letter from attorney Robert Garvin of Kamin's office on July 12, 1999 stating that the Felt document production included certain documents which apparently could only have been obtained from the township's administrative offices. Garvin's letter made no reference to Ambrose's affidavit.

On June 11, 1999, which is before Ambrose's affidavit was received by the Township, Detective Steve Lipa was advised by one of the radio dispatchers that Ambrose had been seen going into the administrative spaces of the

municipal building where the police department is located. This occurred after normal business hours, but during Ambrose's normal working shift. The administrative offices house information pertaining to negotiations over collective bargaining agreements with Township employees, and correspondence between Township officials and the Township's attorneys. Detective Lipa passed this information along to Chief Vietmeier, who in turn told the Township's Commissioners on June 14, 1999. Upon

hearing this, the Commissioners instructed Chief Vietmeier to investigate.

Vietmeier reviewed the videotapes from a surveillance camera positioned above the entrance to the administrative spaces, and they showed Ambrose entering the administrative spaces. Vietmeier's investigation also revealed that daily activity logs prepared by Ambrose for May 29 and July 1, 1999 allegedly indicated that Ambrose was performing duties outside the municipal building when he actually was in the administrative offices.

Chief Vietmeier gave Ambrose a "Loudermill hearing"[1] on July 8, 1999 in connection with his entry into the closed administrative offices and the allegedly misleading entries in his daily activity log. Ambrose admitted that he entered the administrative offices, but said he did so to copy police department forms because the police department's photocopy machine made poor copies. Ambrose denied in his deposition and trial testimony that he made copies of documents produced in the Felt lawsuit while he was in the administrative offices.

On July 9, 1999, Vietmeier informed Ambrose in writing that he was suspended without pay conditional upon a review by the Board of Commissioners. The letter identified the following reasons for the suspension: conduct unbecoming a member of the department; entering a locked municipal building without permission or authority; and false statements concerning official documents.

The Commissioners met and discussed Ambrose's actions on July 12, 1999. During the discussions, Ambrose was accused of copying documents for Officer Felt in aid of Felt's lawsuit against the Township. Although there was discussion of termination, the Commissioners voted to suspend Ambrose for thirty working days. Ambrose is currently appealing his suspension before the Civil Service Commission of Robinson Township.

---

1. This is the name given to a hearing for a public employee conducted pursuant to the Supreme Court's decision in Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985).

Ambrose filed this lawsuit pursuant to the Civil Rights Act of 1871, 42 U.S.C. S 1983, as amended, and the Pennsylvania Whistleblower Law, 43 Pa. Cons. Stat. Ann. S 1421 et seq. Ambrose alleged that the real reason he was suspended was because he had provided an affidavit in support of Officer Felt's lawsuit against the Township, and he alleged that this violated his First Amendment rights. A jury returned a verdict in Ambrose's favor and awarded him $6,200.00 in back wages. He was also awarded $32,678.59 in attorney's fees and costs by the District Court pursuant to 42 U.S.C. S 1983.

Robinson Township appealed claiming numerous errors. [2] We only need to consider one of them because we find that the District Court erred by denying the Township's motion for a judgment as a matter of law. We have appellate jurisdiction pursuant to 28 U.S.C. S 1291.

_____

2. Appellant's issues presented for review included whether the District Court erred: (i) by denying Robinson Township's Fed. R. Civ. P. 50 motion and its post-trial renewed Fed. R. Civ. P. 50 and Fed. R. Civ. P. 59 motions where there was no evidence that the affidavit given by officer Ambrose was a motivating factor in his suspension, and where Appellee's "perceived support" theory did not provide a legal basis for the jury's verdict against Appellant; (ii) by denying Robinson Township's motion for summary judgment where there was no evidence that Ambrose's giving an affidavit was a motivating factor in his suspension; (iii) by denying Robinson Township's motion in limine seeking to exclude as irrelevant evidence that Ambrose was suspended because the Robinson Township Commissioners believed that he had engaged in conduct not protected by the First Amendment, which conduct officer Ambrose denied engaging in; (iv) by instructing the jury that officer Ambrose engaged in conduct protected by the First Amendment by "generally supporting" a fellow officer in another lawsuit; (v) by instructing the jury that Ambrose could prove legal causation by showing that the decision to suspend him was motivated by his perceived support for his fellow police officer's lawsuit; (vi) by refusing to give Robinson Township's proposed jury instructions 12A, 16A, 17A, and 19A; and (vii) by denying Robinson Township's Fed. R. Civ. P. 59 motion for new trial based on Ambrose's improper exercise of a peremptory challenge to strike the only African-American on the jury panel.

5

II.

The Township's first allegation of error is that the District Court should have granted its motion for a judgment as a matter of law. We apply the following standard on review:

> We exercise plenary review of an order granting or denying a motion for judgment as a matter of law and apply the same standard as the district court. Wittekamp v. Gulf & Western Inc., 991 F.2d 1137, 1141 (3d Cir. 1993). Such a motion should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair

and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability. Id. In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version. Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 190 (3d Cir.1992), cert. denied, 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993). Although judgment as a matter of law should be granted sparingly, a scintilla of evidence is not enough to sustain a verdict of liability. Walter v. Holiday Inns, Inc., 985 F.2d 1232, 1238 (3d Cir. 1993). "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." Patzig v. O'Neil, 577 F.2d 841, 846 (3d Cir. 1978) (citation omitted) (quotation omitted). Thus, although the court draws all reasonable and logical inferences in the nonmovant's favor, we must affirm an order granting judgment as a matter of law if, upon review of the record, it is apparent that the verdict is not supported by legally sufficient evidence.

Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993). Therefore, if there is insufficient evidence to support a jury verdict, we should remand to the district court with instructions to enter a judgment as a matter of law for the Township.

6

A.

We apply a three-step test to Ambrose's claim that he was suspended in retaliation for exercising his First Amendment rights. Bd. of County Comm'rs. v. Umbehr, 518 U.S. 668, 675 (1996). First, a plaintiff must show that his conduct was constitutionally protected. Id. Second, he must show that his protected activity was a substantial or motivating factor in the alleged retaliatory action. Id. Finally, the defendant may defeat the plaintiff's case "by showing that it would have taken the same action even in the absence of the protected conduct." Id. See also Green v. Philadelphia Hous. Auth., 105 F.3d 882, 885 (3d Cir. 1997).

The Township argues that Ambrose never met his initial burden of showing that his affidavit was a substantial or motivating factor in the Commissioners' decision to suspend him since he did not produce any evidence showing that any of the Township Commissioners knew about his affidavit before they voted to suspend him on July 12, 1999. All of the Commissioners who voted for the suspension testified that they knew nothing about the affidavit before they voted. If the Commissioners did not know about the affidavit, the Township argues, it could not have been a substantial or motivating factor in their decision. Therefore, Robinson Township contends that the District Court should have entered judgment in its favor.

It is only intuitive that for protected conduct to be a substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct. See Allen v. Iranon, 283 F.3d 1070, 1076 (9th Cir. 2002) (finding in First Amendment retaliation case that"[i]n order to retaliate against an employee for his speech, an employer must be aware of that speech."). Thus, if the Commissioners were unaware of Ambrose's affidavit, it could not possibly have been a substantial or motivating factor in their decision to suspend him, and Ambrose's First Amendment retaliation claim would necessarily fail. We so hold.

Ambrose points to no evidence showing the Commissioners were aware of his affidavit. He argues in his brief that "[t]he fact that all of the commissioners called to

testify denied knowing of the affidavit before the vote on July 12, 1999, is not dispositive of whether the jury could find that one or more of them did know." Br. at 13. Although we agree that the Commissioners' denials are not necessarily dispositive of the issue, Ambrose fails to point to any other evidence showing that they did know about his affidavit. He bears the burden of proof, but fails to sustain it.

The only evidence Ambrose cites is that "Defendant admitted receiving the affidavit on June 17, 1999." Br. at 13. This fact, which is true, is nonetheless misleading when considered out of context, and still fails to prove that the Commissioners knew about Ambrose's affidavit when they voted to suspend him. The parties stipulated at trial that on June 17, 1999 Ambrose's affidavit was received as part of a document production by David Helwig, who had been retained to represent the Township in Officer Felt's lawsuit. App. at 629. Subsequently, on June 23, Helwig sent the entire 371-page document production, including the affidavit, to the Township's solicitor, Sam Kamin. Appellant's Br. at 7; App. at 651. But that is all the record shows. There is no evidence that anyone brought Ambrose's affidavit to the attention of the Township Commissioners or that they were otherwise aware of it when they voted to suspend Ambrose. Thus, the Township's "admission" that it received Ambrose's affidavit on June 17, in the person of its retained counsel, is not at all probative as to whether or when the Commissioners knew about the affidavit.

Ambrose also argues that the "temporal proximity" between the Township's receipt of his affidavit and his suspension provided an adequate basis for the jury's conclusion that the affidavit was a substantial factor in the Commissioners' decision to suspend him. We recognized in Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000), that suggestive timing is relevant to causation in Title VII retaliation cases, and we recently cited Farrell in a prisoner's First Amendment retaliation case in support of

the proposition that "suggestive temporal proximity" is relevant to establishing a causal link between protected conduct and retaliatory action. Rauser v. Horn , 241 F.3d 330, 334 (3d Cir. 2001). Furthermore, other courts of

appeals have more explicitly recognized the relevance of temporal proximity in First Amendment retaliation cases. See Nethersole v. Bulger, 287 F.3d 15, 18 (1st Cir. 2002); Gorman-Bakos v. Cornell Coop. Extension of Schenectady County, 252 F.3d 545, 554-55 (2d Cir. 2001); Cockrel v. Shelby County Sch. Dist., 270 F.3d 1036, 1056 (6th Cir. 2001), petition for cert. filed, 70 U.S.L.W. 3669 (U.S. Apr. 15, 2002) (No. 01-1548); Hudson v. Norris, 227 F.3d 1047, 1051 (8th Cir. 2000); Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002). But see Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1993); Butler v. City of Prairie Vill ., 172 F.3d 736, 746 (10th Cir. 1999).

Yet this is all largely irrelevant here. The cases listed above found temporal proximity to be relevant in establishing that protected activity was a substantial or motivating factor for retaliation. None of these cases suggest that temporal proximity can be used to show that an employer was aware of the protected conduct in the first place. Consequently, Ambrose's "temporal proximity" argument cannot show that the Commissioners had knowledge of his affidavit when they suspended him, which must be found as part of determining whether the affidavit was a substantial or motivating factor in his suspension. We agree, therefore, with the Township that Ambrose offered no evidence sufficient to show that the Commissioners were aware of his affidavit, and we conclude that the District Court erred by not entering judgment as amatter of law in favor of the Township on this point.

B.

We must also address an additional basis upon which it appears the District Court permitted Ambrose's case to go to a jury. The District Court, in its summary judgment opinion, suggested that "perceived support" can be the basis of a First Amendment retaliation case. Presumably, the District Court's "perceived support" theory also weighed on its decision not to direct a verdict, so we should consider the viability of that theory.

The District Court recognized that temporal proximity alone may not be enough evidence to support a finding of

retaliatory discharge. At the summary judgment stage, the court did not actually decide the temporal proximity issue, saying:

>        I need not decide this issue [whether temporal

> proximity alone can be enough evidence to support a
> finding of retaliatory action], however, because there is
> additional evidence to support the allegation that his
> suspension was in retaliation for his support of Officer
> Felt. For instance, there is evidence that the Chief of
> Police and some Commissioners believed that Plaintiff
> was providing Officer Felt with documents to support
> his case. [Quoting excerpts of Chief Vietmeier's
> deposition testimony.] In addition, Commissioner
> Marks testified regarding specific discussions held at
> the Commissioners' meeting where they voted to
> suspend Plaintiff. [Quoting Marks' deposition testimony
> that Detective Lipa accused Ambrose of going through
> Township records to obtain documents for Felt's
> lawsuit.]

App. at 13-16. From this, the District Court concluded
"that the record contains sufficient evidence that a jury
could conclude that Plaintiff 's support of Officer Felt was a
substantial and motivating factor in Defendant's decision to
suspend Plaintiff " and summary judgment would be
inappropriate. App. at 16.

The Township argues that the District Court's "perceived
support" theory cannot form the basis of a First
Amendment retaliation claim. We agree. Plaintiffs in First
Amendment retaliation cases can sustain their burden of
proof only if their conduct was constitutionally protected,
and, therefore, only if there actually was conduct. Fogarty v.
Boles, 121 F.3d 886, 890 (3d Cir. 1997). In Fogarty, a
public school teacher sued the school's principal alleging
that he was punished because of the principal's mistaken
belief that the teacher had called the press about a matter
of public interest at the school. Id. at 887. The teacher
denied contacting, attempting to contact, or intending to
contact the press. Id. We found that because the teacher
did not engage in any speech, his First Amendment
retaliation claim must fail. Id. We distinguished cases in
the regulatory field where liability was assessed against

10

employers for retaliatory discharge based on the employer's
erroneous beliefs about the employee's conduct. Id. at 890.
Additionally, we noted that the Supreme Court in Waters v.
Churchill, 511 U.S. 661 (1994), "made it clear that statutory
rights and constitutional rights in the employment context
are not coextensive" through its observation that"[w]e have
never held that it is a violation of the Constitution for a
government employer to discharge an employee based on
substantively incorrect information." Fogarty , 121 F.3d at
890 (quoting Waters, 511 U.S. at 679). We concluded that
"the absence of speech--in fact, its explicit disclaimer by
plaintiff--is fatal to the plaintiff 's claim." Id. at 891. Other
courts of appeals similarly have held that there can be no
First Amendment claim when there is no speech by the
plaintiff. See Wasson v. Sonoma County Junior Coll., 203
F.3d 659 (9th Cir. 2000), cert. denied, 531 U.S. 927 (2000);
Jones v. Collins, 132 F.3d 1048, 1054 (5th Cir. 1998);

Barkoo v. Melby, 901 F.2d 613 (7th Cir. 1990).

The present case is similar to Fogarty. The"perceived
support" that Ambrose gave to Officer Felt is based on
Ambrose allegedly entering administrative offices after
hours and taking documents which he passed on to Felt.
The District Court cites evidence that Township officials
suspected Ambrose was entering administrative offices and
passing records on to Felt and concludes that this
"perceived support" of Felt may have been a"substantial or
motivating" factor in Ambrose's suspension. The problem
here, as in Fogarty, is that there is no protected conduct.
The only acts that could possibly constitute protected
conduct are Ambrose's alleged actions in obtaining records,
yet Ambrose denies he did any such thing, much like the
teacher's denial in Fogarty. Ambrose claims he entered the
administrative offices only to use the copier because the
police department's copier was malfunctioning.
Furthermore, the District Court instructed the jury that
"unauthorized entry into closed administrative officers for
the purpose of copying records is not activity protected by
the First Amendment." Thus, we are left with the same
situation as in Fogarty: There was no speech (as Ambrose

11

admits and the District Court found), so there can be no
First Amendment retaliation claim.3

III.

In sum, we hold that the District Court erred by not
entering judgment as a matter of law for Robinson
Township. First, there was insufficient evidence to support
a finding that Ambrose's affidavit was a substantial or
motivating factor in his suspension. There is no direct
evidence that the Commissioners were aware of the affidavit
when they voted to suspend him, and "temporal proximity"
is not sufficient to establish their awareness by
circumstantial evidence. Second, the other theory upon
which the District Court based S 1983 liability, the
"perceived support" doctrine, cannot form the basis of a
First Amendment retaliation claim. Therefore, we will
remand the cause for the District Court to enter judgment
in favor of the Township.

Additionally, we will vacate the District Court's award of
attorney's fees and costs to Ambrose as he is no longer a
"prevailing party" entitled to such fees under 42 U.S.C.
S 1988.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

_____

3. Thus, any suggestion by the District Court to the jury in its

instructions that Ambrose's "perceived support" of Officer Felt could form the basis of liability was erroneous. Given our disposition, however, we need not give this error significant attention here.

12