

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-17-2008

# Robert McCann v. Anthony Bellos

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1369

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Robert McCann v. Anthony Bellos" (2008). *2008 Decisions.* Paper 222.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/222

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1369
_____

ROBERT MCCANN,
                                    Appellant

v.

WINSLOW TOWNSHIP; WINSLOW TOWNSHIP POLICE DEPARTMENT;
OFFICER MARK PASSERELLA; CHIEF ANTHONY BELLOS; OFFICER POCOCHI
_____

On Appeal from the United States District Court
for the District of New Jersey
(D. N.J. Civil Action No. 06-cv-03189)
District Judge:  Honorable Noel H. Hillman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 14, 2008
Before:  FISHER, JORDAN and VAN ANTWERPEN, Circuit Judges.

(Filed: November 17, 2008 )
_____

OPINION
_____

PER CURIAM

    Robert McCann, proceeding pro se, appeals an order of the United States District

Court for the District of New Jersey granting summary judgment in his civil rights action

in favor of Winslow Township, the Winslow Township Police Department, two police officers, and the police chief. We will affirm the District Court's order.

We must first address our jurisdiction to entertain this appeal. The Appellees argue that McCann's appeal is untimely because the District Court granted summary judgment on December 20, 2007, and McCann did not file his notice of appeal until January 31, 2008, beyond the requisite 30-day time to appeal. See 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A).[1] McCann, however, filed a letter in District Court on January 14, 2008, indicating his intent to appeal. In his letter, McCann provided change of address information to the Clerk's Office "so that [he could] receive a copy of the order" granting summary judgment. Letter filed 1/14/08. McCann further stated, "[t]he problem is that I want to appeal the decision and only have heard that summary judgement was granted for the defendants as I have not yet received a copy of that decision in which I am going to need for the appeal process." Letter filed 1/14/08. Because McCann's letter was filed within the 30-day time period for filing an appeal and states his intent to appeal the order granting summary judgment, we construe his letter as a timely notice of appeal.

McCann's claims arise from several traffic stops by Officers Passarella and Pizzico of the Winslow Township Police Department. We exercise plenary review over

_____

[1] The thirtieth day fell on Saturday, January 19, 2008. Because Monday, January 21, 2008, was Martin Luther King, Jr. Day, McCann had until January 22 to file his notice of appeal.

2

the District Court's order granting summary judgment, and we review the facts in the light most favorable to McCann, the non-moving party. <u>Lauren W. ex rel. Jean W. v. Deflaminis</u>, 480 F.3d 259, 265-66 (3d Cir. 2007).

The record reflects that on April 27, 2006, Officer Passarella stopped McCann's brother, Michael Dickerson, when he noticed that Dickerson was not wearing his seatbelt. Officer Pizzico arrived at the scene for backup. Dickerson, who is African American, became annoyed and claimed that the stop was based on his race. Dickerson called McCann and asked him to pick him up because he believed the officers were going to tow his truck. When McCann arrived, Officer Pizzico asked him to wait on the side of the road until they were finished with the stop. Dickerson received a citation for failing to wear his seat belt, failing to produce a driver's license upon request, and fraudulently displaying an inspection sticker on his vehicle.

Officer Passarella then approached McCann and asked him who he was. McCann testified at his deposition that he replied that he was not part of the traffic stop, and that Officer Passarella responded that he still wanted to know who he was. McCann told Officer Passarella that he was a Councilman from Chesilhurst, and that his brother had asked him to come to the scene to give him a ride. McCann further testified that Officer Passarella replied that he did not "give a damn about that," that the people in Chesilhurst were stupid, and that "you people don't know how to do anything over there." Certif. of D. Ragonese in Support of Motion for Summary Judgment, Ex. B at 38. According to the

3

police report, McCann took Officer Passarella's name and badge number, and told him that he illegally stopped Dickerson, and that he planned to file a complaint against him. McCann then went to the Police Department and filed a complaint, stating that Officer Passarella was combative and derogatory to Dickerson during the traffic stop and noting his own exchange of words with the officer.

A few weeks later, on May 17, 2006, Officer Pizzico pulled McCann over and issued him a citation for driving with a broken taillight. McCann filed a complaint against Officer Pizzico because he believed the stop was in retaliation for the complaint he had filed against Officer Passarella. In his complaint against Officer Pizzico, McCann stated that she appeared out of nowhere and flashed her lights immediately. He stated that the officer never got close enough to his vehicle to notice a small hole in the taillight, and that she only noticed the hole after the stop. After she stopped the vehicle, McCann heard Officer Pizzico call someone and state, "I got him." Certif. of D. Ragonese, Ex. B at 74, Ex. D. McCann stated that Officer Passerella was at the police station when he arrived there after the stop, and that he felt that he was being targeted because of his race.

At his deposition, McCann testified that he did not think his left taillight had visible damage, and that the right side might have had a noticeable crack. McCann later stated that he was not sure which side was cracked, and that one side was "visibly gone." Certif. of D. Ragonese, Ex. B at 73. He further testified that Officer Pizzico never followed his vehicle or was in back of it. McCann stated that, after she pulled him over,

4

she stopped at the rear of his vehicle and looked at it. McCann asked the officer if he could look, and she replied, "yes, come look. I stopped you for that." Certif. of D. Ragonese, Ex. B at 73. Officer Pizzico gave McCann a ticket for failure to maintain a lens, which he "pleaded down as to have no points." Certif. of D. Ragonese, Ex. B at 75. McCann appears to have told Officer Pizzico during the stop that he planned to file a complaint against her.

On June 30, 2006, Officer Passarella stopped McCann's vehicle. According to the police report, McCann was driving straight across a light and then darted to the left causing the oncoming traffic to stop. Officer Passarella gave McCann citations for failing to yield and for failing to maintain the vehicle's lamps. McCann testified that he got out of his vehicle to see if the taillights were working. He tapped them to check if the lights were faulty, and the lights went out briefly and then came back on.

After the traffic stop, McCann, along with his passenger, went to a Winslow Township municipal building to dump garbage from the vehicle. He also intended to file another complaint at the police station, which was in the same place. McCann testified that Officer Passarella followed him to the municipal building after the traffic stop, and objected to his use of the dumpster because he was not a township resident. After McCann's passenger confirmed that he was a resident, and that the trash belonged to him, they were able to dump the trash. McCann further testified that he said to Officer Passarella, "[y]ou're just not going to give me a break, are you?" Certif. of D. Ragonese,

5

Ex. B at 121. Officer Passarella replied, "[n]o. If you don't like it, sue me." Certif. of D. Ragonese, Ex. B at 121. McCann filed another complaint against Officer Passarella, stating that the officer was retaliating against him because he had filed his earlier complaint, and that the administration was condoning a practice of racism. Shortly thereafter, McCann filed his civil rights action in District Court.[2]

In order to prove that Officers Passarella and Pizzico retaliated against McCann in violation of his First Amendment rights, McCann must show that he engaged in constitutionally protected activity, and that his protected activity was a substantial or motivating factor in the alleged retaliatory action. Ambrose v. Township of Robinson, 303 F.3d 488, 493 (3d Cir. 2002). To establish causation, McCann may prove either an unusually suggestive temporal proximity between the protected activity and the alleged retaliation, or a pattern of antagonistic activity along with timing that suggests a causal link. Deflaminis, 480 F.3d at 267. In the absence of such evidence, McCann must show that the trier of fact should infer causation from the evidence gleaned from the record as a whole. Id. If McCann makes this showing, the officers may defeat McCann's case by

_____

[2]McCann also complained of harassment to the Camden County Prosecutor's Office, which initiated a criminal investigation and found insufficient evidence to prosecute. The Prosecutor's Office noted in a letter to McCann that his taillight was broken when Officer Pizzico stopped his vehicle, and that he had admitted that he had made an illegal left turn at the time that Officer Passarella stopped him. The Winslow Township Police Department also found insufficient evidence to prove McCann's allegations in its internal investigation.

establishing that they would have taken the same action even absent the protected conduct. Ambrose, 303 F.3d at 493.

In their summary judgment motion, the officers stipulated that McCann's complaints constitute protected First Amendment activity. The officers, however, argued that the traffic stops were motivated by legitimate law enforcement purposes given the undisputed fact that McCann had violated the traffic laws at the time of both stops, and that there was no evidence suggesting a retaliatory motive that would allow a jury to find in McCann's favor. The District Court decided that McCann could not show that his filing of the complaints was the cause of the alleged retaliation, noting that the temporal proximity between the filing of the first complaint and the two traffic stops was not unusually suggestive, and concluding that the officers would have initiated the traffic stops in the absence of McCann's complaints.

We agree with the District Court that summary judgment was warranted on McCann's retaliation claims. We have noted that a district court must be cautious in allowing a retaliation claim against a police officer to proceed to trial, observing that officers should not by reason of potential civil liability be discouraged from intervening when their services are needed. Smith v. Marasco, 318 F.3d 497, 513 (3d Cir. 2003); see also Deflaminis, 480 F.3d at 267 (noting potential chilling effect if causation requirements are not enforced). We recognize that McCann produced some evidence suggesting that Officers Passerella and Pizzico intended to harass him. Officer Pizzico

remarked, "I got him" after pulling McCann over. In addition, when McCann

commented, "[y]ou're just not going to give me a break, are you?", Officer Passarella

replied, "[n]o. If you don't like it, sue me." There also appears to be a question as to

whether Officer Pizzico was able to see the broken taillight on McCann's vehicle before

she pulled him over. However, as the District Court noted, the temporal proximity

between the complaints and the stops is not unusually suggestive, and, more importantly,

the record clearly establishes that McCann did violate the traffic laws, including a moving

violation that was inherently dangerous. We conclude that the evidence as a whole falls

short of that from which a jury could find that the officers issued citations to McCann in

retaliation for his complaints rather than because he broke the law.[3]

McCann's remaining claims do not warrant much discussion. The District Court

properly granted summary judgment on McCann's Fourth Amendment claims related to

the stops of his vehicle. See United States v. Delfin-Colina, 464 F.3d 392, 399 (3d Cir.

2006) (stating that there is no constitutional violation where the record establishes

reasonable grounds to conclude that the stopped individual had violated the traffic laws).

Summary judgment was also warranted on any Fourth Amendment claim related to the

---

[3]There also appears to be no evidence establishing that Officers Passerella and Pizzico knew that McCann had filed his complaints. See Ambrose, 303 F.3d at 493 (holding that retaliation claim failed where there was no evidence showing that an employer was aware of an employee's protected conduct). Although the officers have not asserted that they lacked such knowledge, it is McCann's burden to establish that they were aware of the complaints. Id.

stop of McCann's brother's vehicle because McCann's Fourth Amendment rights were not implicated.  Although McCann states that Officer Passeralla insisted that he identify himself, McCann has not asserted that he was not free to leave the scene.  See <u>Florida v. Bostick</u>, 501 U.S. 429, 434 (1991).  We also agree with the District Court that there is no evidence supporting McCann's equal protection claim.  Finally, for the reasons stated by the District Court, Police Chief Bellos, Winslow Township, and the Winslow Township Police Department are entitled to judgment as a matter of law.

Accordingly, we shall affirm the order of the District Court.