**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 18-3203

———————

BRIAN C. KASZUBA,
Appellant

v.

BOROUGH OF DICKSON CITY; MICHAEL FEDORKA;
ROBERT HALL; ROSE LOURYK; RICK CESARI;
JACK HORVATH; JEFFREY KOVALESKI; BARBARA MECCA

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 3-16-cv-01239)
District Judge:  Honorable Malachy E. Mannion

———————

Submitted under Third Circuit L.A.R. 34.1(a)
on June 13, 2019

Before:  HARDIMAN, KRAUSE and PORTER, *Circuit Judges*

(Opinion filed: June 17, 2019)

———————

OPINION[*]

———————

—————————————

  [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Appellant Brian C. Kaszuba appeals the District Court's order of summary judgment dismissing his First Amendment claims against the Borough of Dickson City and several of its council members for retaliation based on his speech and union association. Because we agree with the District Court that Kaszuba has failed to establish a genuine issue of material fact as to the elements of those claims, we will affirm.

## I. Background

Kaszuba was hired by the Borough of Dickson City as an employee in its Department of Public Works (DPW) in 1992 and was a member and a union steward of the Teamsters Local 229 Union starting in 2003.[1] He often expressed his political views by, e.g., displaying signs in his truck for Borough Council candidates that he supported. Beginning in early 2014, Kaszuba expressed his opinion of a new Borough construction project, known as New Borough Hall, by, *inter alia*, attending Borough Council Meetings and—as the Council eventually learned—posting his views on an anonymous Facebook page called "Dickson City Deception."

Kaszuba's employment record remained unblemished, however, until October 16, 2014, when he learned that the Borough Manager, Ches Forconi, had advised Kaszuba's supervisor that Kaszuba was not permitted to enter New Borough Hall except for "official business." Dkt. No. 23-3 ¶ 36. When Kaszuba then confronted Forconi to determine whether he was being singled out for this prohibition, Forconi denied that he

---

[1] As a union steward, he investigated and filed grievances on behalf of fellow union members.

was and explained that a generally applicable written policy would soon be issued. Nonetheless, Kaszuba returned to see Forconi again that same day, this time escalating the encounter by raising his voice, swearing, and getting so close to Forconi that Forconi feared a physical altercation may ensue. The incident prompted the Council President, Appellee Barbara Mecca, to contact the Borough Police Chief to conduct a criminal investigation, but charges were never filed against Kaszuba.

The next day, October 17, Forconi sent Kaszuba a letter advising him that he was being suspended and placed on paid administrative leave but also requiring him to "remain available to appear for employment interviews during normal working hours." JA 9. Kaszuba initially scheduled a meeting to discuss the incident with Mecca on October 21, but Mecca cancelled the meeting on October 20, which was the same day that Kaszuba revealed on Facebook that he was the creator of "Dickson City Deception."

Although Forconi then attempted to schedule interviews with Kaszuba, Kaszuba declined to cooperate. After Kaszuba failed to appear at the employment meeting scheduled on October 28, it was rescheduled for the morning of October 29. When Kaszuba then failed to appear for that morning meeting, Forconi sent him another letter recommending a multi-day suspension and advising that if he failed to appear at the third meeting, scheduled for that afternoon, Forconi would recommend his termination. When Kaszuba again failed to appear, Forconi sent him a third letter, explaining the reason for his recommendation of termination and inviting Kaszuba to offer "any and all information which would cause [Forconi] to reconsider taking disciplinary action . . . ." S.R. 225b. Kaszuba declined that opportunity, and on November 12, Kaszuba was

3

advised that Forconi would be asking the Borough Council to vote for his termination at an upcoming Council Meeting. The Council unanimously approved that recommendation.

Kaszuba then filed a complaint in the Middle District of Pennsylvania, asserting First Amendment retaliation claims against seven council members—Michael Fedorka, Robert Hall, Rose Louryk, Rick Cesari, Jack Horvath, Jeffrey Kovaleski, and Barbara Mecca—as well as a claim pursuant to *Monell v. Department of Social Security*, 436 U.S. 658 (1978), against the Borough. The District Court granted summary judgment in Appellees' favor on all claims, concluding that Kaszuba had failed to raise a triable issue because "[t]he overwhelming undisputed evidence shows that plaintiff repeatedly failed to comply with the Borough's investigation regarding the October 16, 2014 incident," and thus that Kaszuba's "insubordination and his failure to report for his scheduled employee interviews were the reasons for his termination." *Kaszuba v. Borough of Dickson City*, No. 3:16-1239, 2018 WL 4492813, at *10 (M.D. Pa. Sept. 19, 2018). Kaszuba timely appealed.[2]

---

[2] Kaszuba waived his *Monell* claim on appeal by failing to raise it. *See Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 455 (3d Cir. 2018). In any event, as we conclude that he has failed to adduce sufficient evidence of a constitutional violation to survive summary judgment, *a fortiori*, he cannot demonstrate that any constitutional violation was authorized, sanctioned, or condoned on the part of the Borough or its officials. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986).

## II.    Discussion[3]

To prevail on his First Amendment retaliation claims, Kaszuba was required to show that (1) he engaged in constitutionally protected activity, and (2) that the activity "was a substantial or motivating factor" for Appellees' adverse action. *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d Cir. 2015).[4] If these two elements are satisfied, "the burden shifts to [Appellees] to show 'by a preponderance of the evidence that [they] would have reached the same decision in the absence of the protected conduct.'" *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). To establish the requisite causal connection, Kaszuba must prove either: "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). "In the absence of that proof the plaintiff must show that from 'the evidence gleaned from the record as a whole' the trier of the fact should

---

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367(a), and we have jurisdiction under 28 U.S.C. § 1291. We review the District Court's grant of summary judgment *de novo*, *Fasold v. Justice*, 409 F.3d 178, 183 (3d Cir. 2005), and we will affirm if, viewing the facts in the light most favorable to Kaszuba as the non-moving party, "there is no genuine dispute as to any material fact" and the Appellees are "entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a); *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).

[4] Appellees concede that "[f]or purposes of [their] Motion for Summary Judgment only, [they] . . . d[o] not dispute that [Kaszuba] engaged in protected activities[.]" Appellees' Br. 20 n.4. In light of that concession, and because this case can be resolved on causation, we need not consider whether Kaszuba's activity was constitutionally protected in the context of a speech claim separate and apart from an association claim. *Cf. Palardy v. Twp. of Millburn*, 906 F.3d 76, 84 (3d Cir. 2018).

infer causation." *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

On appeal, Kaszuba raises two arguments as to causation, neither of which is persuasive. First, he argues that there is a genuine issue of material fact as to whether the temporal proximity between Appellees' awareness as of October 20 that Kaszuba created the Facebook page "Dickson City Deception" and Appellee Mecca's decision that same day to cancel a meeting with him is "unusually suggestive" of a retaliatory motive. *DeFlaminis*, 480 F.3d at 267. However, as the District Court recognized, Appellees took adverse action against Kaszuba by placing him on administrative leave on October 17, before they learned of his Facebook activity. *Kaszuba*, 2018 WL 4492813, at *9; *see Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002) ("[F]or protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct."). Moreover, the fact that Appellees took no further adverse action until after Kaszuba's intervening failure to attend the October 28 and 29 meetings undermines any inference of a causal connection. *See Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (temporal proximity between protected activity and adverse action negated where appellant's "attendance record during the intervening three-week period" was "far more strongly suggest[ive]" of a non-retaliatory reason).

Second, Kaszuba contends that the District Court did not afford proper weight to the deposition testimony of four witnesses indicating "that they believed that the October 16, 2014 incident . . . and the failures to appear at the requested subsequent interviews

6

were pretext for the actual reason for Kaszuba's termination: his outspoken dissent of the government and its officials." Appellant's Br. 12. But as the District Court explained, all four witnesses failed to "cite to specific evidence" and, by their own admission, were expressing merely "opinions and beliefs." *Kaszuba*, 2018 WL 4492813, at \*10. Because "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment," *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) (quoting *Robertson v. Allied Signal, Inc.*, 914 F.3d 360, 382 n.12 (3d Cir. 1990)), the District Court correctly discounted the deposition testimony and entered summary judgment in favor of Appellees.

## III. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.