**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-2560

_____

KATHY WATSON; TIMOTHY SHELLEY,

Appellants

v.

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF REVENUE

_____

On Appeal from the United States District Court for the
Middle District of Pennsylvania
(District Court Nos.: 1-18-cv-01055 & 1-18-cv-01352)
Judge: Honorable Jennifer P. Wilson

_____

Submitted under Third Circuit L.A.R. 34.1(a)
April 20, 2021

(Filed: May 11, 2021)

Before: AMBRO, RESTREPO and RENDELL, *Circuit Judges*.

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**RENDELL**, *Circuit Judge*.

Timothy Shelley challenges the District Court's grant of summary judgment in favor of the Commonwealth of Pennsylvania Department of Revenue (the "Department") on his claims of retaliation and interference pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*. We agree with the District Court that Shelley failed to meet his burden of demonstrating retaliation and interference under the *McDonnell Douglas* framework. We will therefore affirm the District Court's order.

I.

Timothy Shelley was employed at-will in the Department from 1999 until he was terminated in May 2017. During this time, Shelley provided loans to three employees at the Department, including his supervisor Kathy Watson. The loans violated the legal interest rate under state law and were discouraged by Department Standards of Conduct. In November 2016, the Department, through the Office of the Inspector General, initiated an investigation into Shelley's loans. Following the investigation, the Department terminated Watson on March 1, 2017.

Watson served Shelley with a subpoena to testify at her unemployment compensation hearing on April 17, 2017. Shelley told Watson's former supervisor, Bonnie Kabonick, about the subpoena. The following day, Kabonick issued Shelley a notice for a pre-disciplinary conference scheduled for April 19, 2017. The notice stated that the hearing was related to allegations that Shelley sent excessive e-mails, engaged in non-work-related activities during working hours, issued loans in excess of the legal interest rate, and failed to disclose loans that he had issued, all in violation of Department

2

policy. Shelley then testified at Watson's hearing. At Shelley's pre-disciplinary conference the following day, Jane Baldo, an employee in the Labor Relations Division, and Tracey Sullivan, Baldo's subordinate, discussed the topics listed in the notice.

On May 8, 2017, Shelley requested FMLA leave paperwork from Human Resources. The following day, he was diagnosed with depression by his physician, who then faxed the FMLA paperwork to the Department's Human Resources division. That same day, Shelley met with the Department's FMLA Coordinator.

Approximately an hour-and-a-half following Shelley's meeting with the FMLA Coordinator, Department Director Tim Scott met with Shelley and told him that his employment was terminated. Scott provided Shelley with a termination letter that was signed by the acting Secretary of Revenue, Daniel Hassell. The letter provided that he was terminated for sending excessive emails, engaging in non-work-related activities during working hours, issuing loans in excess of the legal interest rate, not disclosing the loans, and failing to file or pay Pennsylvania personal income tax returns.

On July 6, 2018, Shelley filed a complaint against the Department for retaliation and interference pursuant to the FMLA as well as a state-law claim for wrongful termination.[1] Shelley argued that he had in fact paid his Pennsylvania taxes and did not violate any Department policies when he gave out loans and engaged in non-work-related

---

[1] Watson also filed a complaint against the Department for retaliation under Title VII and the Pennsylvania Human Relations Act. Watson's case was consolidated with Shelley's in the District Court. The District Court granted summary judgment in favor of the Department on Watson's claims. Although Watson filed a notice of appeal, she decided not to pursue it further.

activities.  The District Court granted summary judgment in favor of the Department as to the retaliation and interference claims and declined to exercise jurisdiction as to the state law claim.

## II.

The District Court had subject matter jurisdiction over the FMLA claims pursuant to 28 U.S.C. § 1331.  This Court has jurisdiction to review the District Court's final decision under 28 U.S.C. § 1291.  *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 n.8 (3d Cir. 2012).

In reviewing the District Court's grant of summary judgment, this Court exercises plenary review and "view[s] the evidence in the light most favorable to the nonmoving party" to determine whether a genuine issue of material fact exists and whether "the movant is entitled to judgment as a matter of law."  *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (citing Fed. R. Civ. P. 56(a)).  This requires "evidence on which the jury could reasonably find for the [nonmovant]."  *Id.*

## III.

Shelley's retaliation and interference claims turn on the same set of facts surrounding his termination.  We will begin with his retaliation claim.

We analyze FMLA retaliation claims "through the lens of employment discrimination law."  *Lichtenstein*, 691 F.3d at 302.  In cases based on circumstantial evidence such as this one, we rely on "the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *Id.*

4

To prevail on a retaliation claim under the FMLA, Shelley must establish that 1) he invoked a right under the FMLA, 2) he suffered an adverse employment decision, and 3) there was causation between the two. *Id*. Under the *McDonnell Douglas* framework, Shelley has the initial burden of making a prima facie case of these three elements. *Id*. If this prima facie burden is met, the Department then has the burden of production to "articulate some legitimate, nondiscriminatory reason" for its decision to terminate Shelley. *Id.* (citation omitted). If the Department meets this burden, the burden shifts back to Shelley to show "the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Daniels*, 776 F.3d at 193 (citation omitted).

On appeal, the Department does not challenge the District Court's conclusion that Shelley satisfied his initial burden of establishing a prima facie case. We therefore turn to the Department's burden to provide a "legitimate, non-retaliatory" reason for Shelley's termination. *See id*. The Department pointed to Shelley's loans to fellow employees, non-work-related computer activity, and failure to properly file Pennsylvania income tax as reasons for his termination. We agree with the District Court that the Department's proffered reasons, which are supported by the record, satisfy its burden of production under the *McDonnell Douglas* framework.

To overcome the Department's proffered legitimate, non-discriminatory reasons for termination, Shelley must "*either* (i) discredit[] the proffered reasons, either circumstantially or directly, or (ii) adduc[e] evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the

5

adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). At this step, Shelley must make a second showing of causation "to satisfy her ultimate burden of persuasion by proving pretext." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). This requires demonstrating by "a preponderance of the evidence that there is a 'but-for' causal connection" between the adverse employment action and retaliatory animus." *Id.* at 258. A causal connection between the protected activity and an employer's alleged retaliation, however, cannot be established "without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted." *Daniels*, 776 F.3d at 196. Moreover, as the Supreme Court has explained, an employer "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Clark City Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001); *cf. Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 801 (3d Cir. 2003) (holding that plaintiff failed to make a prima facie showing of discrimination when employee "provided no evidence to rebut [employer's] declaration that he was unaware of [the protected activity] when he made his decision," to terminate employee).

Shelley argues that the temporal proximity between his FMLA request and termination is enough to carry his burden. We disagree. Shelley provides no evidence that the Department employees who fired him had any knowledge of the FMLA filing. Although Shelley was fired only one day after he requested the FMLA paperwork, the record indicates he had been under investigation by the Department for months.

6

Additionally, the Department provided a declaration from Jane Baldo, who recommended Shelley for termination following the disciplinary conference. Baldo reaffirmed that the disciplinary decision for Shelley was made three weeks prior to his termination, that the termination letter was prepared, approved, and signed before May 9, 2017, and that she did not know of the FMLA request until after Shelley was terminated. We have explained that "[i]t is only intuitive that for protected conduct to be a substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct." *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002). Without *any* evidence of the decisionmaker's knowledge of Shelley's protected conduct, Shelley cannot establish a causal connection between the protected activity and his termination. This is only bolstered by the fact that the Department investigated Shelley's conduct for months prior to his termination and provided evidence that the decision to terminate him predated the protected activity. Shelley therefore cannot meet his burden of showing that the Department's reasoning was pretextual. Accordingly, we agree with the District Court that Shelley's retaliation claim fails.

For the same reason that Shelley's retaliation claim falls short, we conclude that the District Court properly granted summary judgment on his duplicative claim of interference. *See Lichtenstein*, 691 F.3d at 312 (employer can defeat interference claim if it can demonstrate that termination was for reasons "unrelated to" employee's exercise of FMLA rights).

7

IV.

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor of the Department.